**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY P., | |
| **Plaintiff,** | |
| | **Civil Action No.: 22-4181 (ES)** |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

SALAS, DISTRICT JUDGE

Plaintiff Anthony P. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* (*See* D.E. No. 1). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.   BACKGROUND

On January 7, 2019, Plaintiff filed an application for DIB, alleging disability beginning on March 1, 2017. (D.E. No. 4, Administrative Record ("R.") at 273–76).[1] He claimed disability based on several impairments, including neck injury, back pain, right arm range of motion loss, right leg pain and weakness, memory loss, focus issues, left wrist weakness, left shoulder weakness and pain, and seizures. (*Id.* at 295). His application was denied initially and on reconsideration.

---

[1] Plaintiff later amended his alleged onset date to August 3, 2017 at the hearing before the Administrative Law Judge ("ALJ"). (R. at 45).

(*Id.* at 137–42 & 148–50).  On May 18, 2021, an ALJ held a hearing, at which Plaintiff and a vocational expert testified.  (*Id.* at 37–97).

On August 4, 2021, the ALJ denied Plaintiff's application for DIB for the period of time before November 6, 2019.  (*Id.* at 14 & 24).  The ALJ held that Plaintiff was disabled as of November 6, 2019, within the meaning of the Act, but was not disabled before that date because Plaintiff had the residual functional capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy.  (*Id.* at 14 & 23–24).  More specifically, the ALJ determined that Plaintiff had the RFC before November 6, 2019

> to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds, or exposure to heavy machinery and unprotected heights; occasionally climbing of ramps and stairs, and occasionally crouch, crawl, stoop, kneel, balance; no overhead reaching with either arm; frequent handling and feeling; and the claimant is limited to simple and unskilled tasks.

(*Id.* at 18).  Relying on vocational expert testimony, the ALJ found that an individual with the above RFC could perform work as (i) an electronic worker (approximately 1,000–1,200 jobs in the national economy); and (ii) an assembler of small products (1,000–1,200 jobs).  Further, the ALJ noted that even if Plaintiff was limited to sedentary work, which the ALJ did not find, but entertained during the hearing, there were other jobs that Plaintiff could perform including that of (i) a surveillance system operator (2,900 jobs); (ii) a call out operator (2,800 jobs); and (iii) a cashier (2,000 jobs).  (*Id.* at 23).

On May 4, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 1–6).  Plaintiff filed the instant appeal on June 22, 2022, which the court has subject-matter jurisdiction to decide under 42 U.S.C. § 405(g).  (D.E. No. 1).  On May 3, 2023, Plaintiff filed a brief in support of the instant appeal.  (D.E. No. 8 ("Mov. Br.")).  The Commissioner opposed.  (D.E. No. 10 ("Opp. Br.")).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits

To qualify for DIB, a claimant must show that he is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari,* 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'Work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

"The Commissioner uses a five-step process when making disability determinations. . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520). "The claimant bears the burden of proof for steps one, two, and four," and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2 (citation omitted). If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

***Step One***. At step one, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If

an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

*Step Two*. At step two, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See*, *e.g., McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. § 404.1520(c)).

*Step Three*. At step three, the claimant may show, based on medical evidence, that his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings") as of the DLI. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant makes such a showing, he is presumptively disabled and entitled to benefits. If he does not make the showing, he proceeds to step four.

*Step Four*. At step four, the claimant must show that he lacked the RFC to perform his past relevant work as of the DLI. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the claimant lacks the RFC to perform his past relevant work, the analysis proceeds. *See, e.g., Plummer*, 186 F.3d at 428.

*Step Five*. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). If the

Commissioner shows that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See id.*

### B.      Standard of Review

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360.

Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

## III.      THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability on March 1, 2017. (R. at 15–16).

At step two, the ALJ determined the Plaintiff had the following severe impairments: herniation of the lumbar spine with a small tear at the L2-L3 and L4-L5 level, degenerative disc disease of the cervical and lumbar spine, subdeltoid bursitis of the right shoulder, partial tears of supra and infra spinatus tendons, SLAP tear, and major depressive disorder.  (*Id.* at 16).

At step three, the ALJ considered Listings 1.15 for disorder of the skeletal spine resulting in compromise of a nerve root(s); 1.16 for lumbar spinal stenosis resulting in compromise of the cauda equina; 12.04 for depressive, bipolar, and related disorders; and 12.06 for anxiety and obsessive-compulsive disorders.  (*Id.* at 16–17).  The ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations.  (*Id.*).

At step four, the ALJ concluded that from March 1, 2017, to November 6, 2019, Plaintiff had the RFC to perform light work, with certain exceptions.  (*Id.* at 18).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; if someone can do light work, that individual can also do sedentary work.  20 CFR 404.1567(b).  The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds, and could not be exposed to heavy machinery and unprotected heights.  (*Id.*).  The ALJ further found that Plaintiff could occasionally climb ramps and stairs, crouch, crawl, stoop, kneel, and balance, could frequently handle and feel, but could not reach overhead with either arm.  (*Id.*).  The ALJ also found that Plaintiff was limited to simple and unskilled tasks.  (*Id.*).  Beginning on November 6, 2019, the ALJ found that Plaintiff had the RFC to perform light work with the same exceptions listed in the above paragraph.  (*Id.* at 21).  In addition, the ALJ found the Plaintiff would be off task by at least fifteen percent of the workday or would be absent more than once per month.  (*Id.*).  The ALJ arrived at this determination based in large part on a November 2019 MRI, which

revealed that Plaintiff had increased disc herniation in the lumbar spine.  (*Id.* at 21–22).  Further, the ALJ ultimately found that since March 1, 2017, the Plaintiff had been unable to perform any past relevant work.  (*Id.* at 22).

Finally, at step five, after considering Plaintiff's background, RFC, and vocational expert testimony, the ALJ found that there were jobs that existed in "significant numbers in the national economy" that Plaintiff could perform prior to November 6, 2019.  (*Id.* at 23).  Specifically, ALJ found that prior to November 6, 2019, an individual with Plaintiff's RFC could perform work as (i) an electronic worker (approximately 1,000–1,200 jobs in the national economy); and (ii) an assembler of small products (1,000–1,200 jobs).  Further, the ALJ noted that even if Plaintiff was limited to sedentary work, which the ALJ did not find, but entertained during the hearing, there were other jobs that Plaintiff could perform including that of (i) a surveillance system operator (2,900 jobs); (ii) a call out operator (2,800 jobs); and (iii) a cashier (2,000 jobs).  (*Id.* at 23). Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act prior to November 6, 2019. (*Id.* at 24).  Nevertheless, beginning on November 6, 2019, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id*. at 24). Accordingly, the ALJ found Plaintiff to be disabled as of November 6, 2019.  (*Id*.).

## IV.    DISCUSSION

### A.    Step Four

Plaintiff challenges the ALJ's determination at step four for the period prior to November 6, 2019.  *First*, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to provide a function-by-function analysis or explain why, from the medical evidence of record, Plaintiff retained the RFC to perform light work for the period

prior to November 6, 2019.  (Mov. Br. at 16–19 & 24).  *Second*, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ's decision fails to explain why Plaintiff was found to be disabled for the period beginning on November 6, 2019, but not before that date, when Plaintiff suffered from the same injuries and impairments both before and after November 6, 2019.  (*Id.* at 19–23).  The Court considers Plaintiff's challenges to the ALJ's decision in turn.

<h3 style="text-align:center">i.   Function by Function Analysis</h3>

*First*, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination for the period prior to November 6, 2019 because the ALJ failed to conduct a "function-by-function" analysis, as required by Social Security Ruling ("SSR") 96-8p, when finding that Plaintiff retained the RFC to perform light work, and failed to explain, among other things, how long Plaintiff can sit, stand, walk, lift, and carry.  (*Id.* at 16–17).  Plaintiff further contends that the RFC for the period prior to November 6, 2019 is a "foundationless conclusory assertion" because one can simply repeat the ALJ's RFC rationale and substitute any of the other four exertional categories for "light" work—e.g. "sedentary," "medium," "heavy," or "very heavy" —without experiencing substantive change to the rationale.  (*Id.* at 17–18).  The Commissioner opposes, asserting that the ALJ's RFC finding prior to November 6, 2019 captured "all relevant and probative evidence and accounted for all relevant limitations."  (Opp. Br. at 8).  For the following reasons, the Court agrees with the Commissioner.

The RFC constitutes "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p; *see also* 20 C.F.R. § 404.1545(a).  Social Security Regulation 96–8p states that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his

8

or her work-related abilities on a function-by-function basis." SSR 96–8p. The functions that must be addressed include the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." *Id.* Only after the function-by-function analysis "may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

"[A]n ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis." *Lorie H. v. Comm'r of Soc. Sec.*, No. 20-13192, 2022 WL 2803168, at \*6 (D.N.J. July 18, 2022) (citation omitted); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (stating that the ALJ is not required to recite every tidbit of evidence). Notably, when formulating the RFC, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce . . . a detailed statement in writing." *Torres v. Comm'r of Soc. Sec.*, No. 14-6178, 2015 WL 8328346, at \*8 (D.N.J. Dec. 8, 2015) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (Table), 00–1995, slip op. at 4 (3d. Cir. Dec. 19, 2000)). In fact, the Third Circuit does not require an ALJ to perform a "function-by-function" analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record. *See Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do."); *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96–8p, where the ALJ questioned the claimant about the

physical limitations of her prior work, and substantial evidence supported the ALJ's findings). Rather, the ALJ must merely "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Hernandez-Flores v. Comm'r of Soc. Sec.*, No. 13-4738, 2015 WL 4064669, at *6 (D.N.J. July 1, 2015) (citing *Bencivengo*, slip op. at 4–5). In other words, in order to discharge the ALJ's evaluative obligation, the ALJ must consider all the relevant evidence, and must render an RFC finding "with 'a clear and satisfactory explication'" of the substantial bases upon which it rests. *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001)).

The ALJ's RFC determination in this instance plainly satisfies this standard. Indeed, in assessing Plaintiff's RFC, the ALJ thoroughly discussed Plaintiff's medical history, his self-reported limitations and abilities, his hearing testimony, the medical opinions of the consultative examiners and medical consultants, as well as the other record evidence. The ALJ began her RFC analysis by recounting Plaintiff's testimony on his motor vehicle accident in December 2016 and how he described suffering severe neck, shoulder, lower back, and body pain after the accident. (R. at 18). The ALJ noted that Plaintiff "reported difficulty completing personal care as well as activities of daily living such as walking, standing, sitting, climbing stairs, and household work." (*Id.*). Plaintiff described being unable to straighten his right arm and stated that he was prescribed a cane for ambulation. (*Id.*). Finally, the ALJ noted that Plaintiff reported depressive symptoms and difficulty concentrating, completing tasks, and remembering. (*Id.*).

The ALJ then found that Plaintiff statements about the intensity, persistence, and limiting effects of his symptoms were "generally inconsistent from March 2017 to November 2019." (*Id.*). More specifically, after carefully reviewing the evidence, the ALJ found that the Plaintiff's

10

medically determinable impairments could reasonably be expected to cause his alleged symptoms, but also found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms was not fully supported prior to November 6, 2019. (*Id.* at 18–19). To support this conclusion, the ALJ considered medical evidence, including MRI reports, which revealed that Plaintiff's shoulder and neck were "really pretty much fine" except for some tendinitis after his car accident. (*Id.* at 19). The ALJ noted that Nathanial Sutain, M.D., examined Plaintiff during this period and observed functional strength and range of motion. (*Id.*). In fact, Dr. Sutain also conducted physical evaluations of Plaintiff between March and May 2017, where he found Plaintiff to ambulate with a "symmetric" gait and stance and found that Plaintiff had functional" range of motion and 5/5 strength. (*Id.*). As the ALJ reported, there was no evidence or observation by Dr. Sutain that Plaintiff ambulated with a cane or required assistance or any assistive device. (*Id.*). The ALJ also observed that in August 2017 x-ray and MRI tests showed loss of disc height in Plaintiff's lumbar spine as well as degenerative changes in the lumbar spine. (*Id.*). However, the ALJ noted that contemporaneous physical evaluations by Dr. Sutain consistently revealed 5/5 strength and functional range of motion. (*Id.*). Exploring additional medical evaluations, the ALJ addressed a report from Kumar Sinha, M.D. around the same time, which stated that Plaintiff had 5/5 strength, negative straight leg raising, and "despite limited range of motion in the cervical spine, the [Plaintiff] had intact sensation." (*Id.*). The ALJ found that Plaintiff reported worse back pain in November 2017, but that medical evaluations at the same time from John Knightly, M.D., revealed "normal muscle tone and strength with no subluxation." (*Id.*). Further, the ALJ pointed out that multiple physical evaluations from Dr. Sutain from January 2018 to November 2018 revealed that aside from Plaintiff's complaint and evidence of muscle tenderness in the back and hands and elbows, Plaintiff "consistently ambulated with a 'symmetric'

gait and swing, and he had functional range of motion and 5/5 strength." (*Id.*).  The ALJ then turned to medical records from September 2018, including an MRI of Plaintiff's spine, which indicated only mild lumbar spondylosis with no significant central or foraminal stenosis as well as physical evaluations performed by Rederick Tiencken, P.A., which revealed 5/5 strength in all extremities.  (*Id.*).  In February 2019, the ALJ noted that Dr. Sutain again consistently reported that Plaintiff had full muscle strength and functional range of motion, despite his complaints of pain.  (*Id.*).  In addition, while the ALJ considered an orthopedic consultative examination dated April 2019 from Betty Vehknis, M.D., which indicated that Plaintiff had a limited range of motion and ambulated with a cane, the ALJ also noted that Dr. Vehknis stated that there was no clear indication for a cane and Plaintiff had normal functioning hands for gross and fine manipulations.  (*Id.* at 20).  Further, the ALJ noted that in February and April 2019, Samiappan Muthusamy, M.D., observed that Plaintiff ambulated with a "normal" gait and he had "unremarkable" upper and lower extremities.  (*Id.*).  Finally, the ALJ also noted that in May 2019, Deogracias Bustos, M.D., reported that the claimant could perform up to light work, "including but not limited to lifting and carrying up to 20 pounds and occasional postural activities except never climbing ladders, ropes, or scaffolds." (*Id.*).

As for Plaintiff's mental impairments, the ALJ noted that in August 2017 and November 2017 Plaintiff was fully alert and oriented with normal affect and mood.  (*Id.*).  Though a consultative examination in May 2018 with Steven Yalokowsky, P.h.D. revealed that Plaintiff reported feeling sad and depressed, Dr. Yalokowsky observed that Plaintiff was pleasant and cooperative and had a fair prognosis.  (*Id.*).  Thereafter, the ALJ noted that in April 2019 Plaintiff did not exhibit any signs of anxiety, depression, or confusion.  (*Id.*).  Further, the ALJ noted that another consultative examination dated May 2019 with Ernesto Pedomo, Ph.D. revealed that

despite the claimant's depressed mood, he was not seeing a psychiatrist or getting mental health therapy. (*Id.*). And the ALJ observed that in May 2019, "DDS medical consultant, Robert Eckard found that the claimant had up to mild and moderate limitations maintaining social functioning, performing activities of daily living, and maintaining concentration, persistence or pace." (*Id.*).

After considering the aforementioned evidence, the ALJ concluded that before November 6, 2019, Plaintiff had the RFC to perform light work, as defined in 20 CFR 404.1567(b), with certain limitations. (*Id.* at 21). The ALJ explained that she limited Plaintiff to performing no more than light work because Plaintiff had multiple unremarkable physical evaluations, but also reported difficulty completing activities of daily living, had a history of back and shoulder pain, and demonstrated a subjective need for ambulating with a cane. (*Id.* at 21). Moreover, because Plaintiff's testimony indicated that he suffered neck, shoulder, lower back, and body pain after his accident, the ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds, and could not be exposed to heavy machinery or unprotected heights. (*Id.*). For the same reason, the ALJ further found that Plaintiff could occasionally climb ramps and stairs, crouch, crawl, stoop, kneel, and balance, could frequently handle and feel, but could not reach overhead with either arm. (*Id.*). Finally, because Plaintiff only demonstrated mild to moderate mental limitations, the ALJ also found that Plaintiff should be limited to simple and unskilled tasks. (*Id.*). Against this backdrop, the ALJ plainly reviewed all of the relevant evidence, and provided a clear explanation of the bases for her determination that Plaintiff retained the RFC to perform light work, with certain exceptions. *See Torres*, 2015 WL 8328346, at *9 (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination for the period prior to November 6, 2019 because the ALJ failed to conduct a "function-by-function" analysis, as required by SSR 96-8p. (Mov. Br. at 16–17). Plaintiff argues that the ALJ

erred in her RFC determination by not specifically addressing all exertional capacity functions required to be assessed by the ALJ under SSR 96-8p, including sitting, standing, walking, lifting, and carrying.  Plaintiff contends that the ALJ wholly failed to explain how long Plaintiff could stand, sit, or walk or how much Plaintiff could lift and carry and for what part of the day as required by SSR 96-8p.  (*Id.* at 17).  Plaintiff's argument is unavailing.  SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC.  Indeed, SSR 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually.  SSR 96-8p.  Although the ALJ did not explicitly opine on each element of the "light work" exertional level, that does not mean the ALJ did not "consider" those functions.  In fact, as detailed below, the ALJ's detailed RFC analysis clearly referenced tasks relevant to the "light work" analysis.

The regulations define "light work" as the following:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b).  Further SSR. 83-10 provides that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Here, with respect to Plaintiff's ability to walk and stand, the ALJ considered multiple medical evaluations, which indicated that Plaintiff had functional strength and range of motion, ambulated

with a symmetric gait and stance, and did not require an assistive device when walking.  (*See, e.g.,* R. at 19 ("The claimant was examined by Nathanial Sutain, M.D. during this period and he observed 'functional' strength and range of motion."); *id.* ("Nevertheless, physical evaluations between March and May 2017 by Dr. Sutain consistently showed that the claimant ambulated with a 'symmetric' gait and stance . . . Furthermore, there was an absen[ce] of evidence or observation by Dr. Sutain that the claimant ambulated with a cane or required assistance or any assistive device."); *id.* ("[T]he contemporaneous physical evaluations by Dr. Sutain consistently revealed 5/5 strength and functional range of motion."); *id.* ("Likewise, the multiple physical evaluations between January 2018 to November 2018 with Dr. Sutain revealed that aside from the claimant's complaint and evidence of muscle tenderness in the back and hands and elbows, the claimant consistently ambulated with a 'symmetric' gait and swing, and he had functional range of motion and 5/5 strength in the musculoskeletal."); *id.* ("Dr. Sutain again consistently reported that the claimant had full muscle strength and functional range of motion, despite the claimant's complaint of pain and muscle tenderness."); *id.* at 20 ("[I]n February and April 2019, Samiappan Muthusamy, M.D., observed that the claimant ambulated with a 'normal' gait and he had 'unremarkable' upper and lower extremities.")).  And while the ALJ noted that Plaintiff used a cane, he also observed that the medical record showed little evidence that it was medically necessary or prescribed by his treating doctors.  (*Id.* at 16; *id.* at 20 ("Dr. Vehknis stated that the claimant had chronic low back pain and though he ambulated with a cane, there was no clear indication for a need for a cane."); *id.* ("Dr. Pedoma did observe that the claimant ambulated with a cane and had an impaired gait. However, Dr. Pedoma is a psychologist and the purpose of the claimant's evaluation was to examine the claimant's mental symptoms.")).[2]  Likewise, with respect to Plaintiff's ability to lift

---

[2]     Plaintiff contends that the ALJ utterly rejected the idea that Plaintiff required a cane to ambulate despite numerous observations by orthopedists and a psychologist who reported witnessing Plaintiff relying on a cane to walk.

and carry and strength and range of motion, the ALJ considered a report from Dr. Bustos, which stated that Plaintiff could perform up to light work, including but not limited to lifting and carrying up to 20 pounds and occasional postural activities except never climbing ladders, ropes, or scaffolds.  (*Id.* at 20).  Further, at the administrative hearing, the ALJ also specifically questioned Plaintiff as to his ability to reach for certain items and raise and extend his arms.  (*Id.* at 59–61 & 68–69).  And the ALJ considered medical evaluations, which indicated that Plaintiff had normal functioning hands for gross and fine manipulations.  (*Id.* at 20 ("Dr. Vehknis stated that the claimant had chronic low back pain and though he ambulated with a cane, there was no clear indication for a need for a cane and that the claimant had normal functioning hands for gross and fine manipulations.")).  After considering the aforementioned evidence, the ALJ concluded that Plaintiff had the RFC to perform light work, but could not climb ladders, ropes, or scaffolds, and could not be exposed to heavy machinery and unprotected heights.  (*Id.*).  Further, the ALJ found that Plaintiff could occasionally climb ramps and stairs, crouch, crawl, stoop, kneel, and balance, could frequently handle and feel, but could not reach overhead with either arm and should be limited to simple and unskilled tasks.  (*Id.*).  As such, the ALJ did not err in her articulation of Plaintiff's RFC by not explicitly opining on each element of the "light work" exertional level.  This is particularly so given that the ALJ's detailed RFC analysis clearly referenced tasks relevant to

---

(Mov. Br. at 23 n.4).  However, the ALJ explicitly acknowledged that Plaintiff used a cane, but also noted that the medical record showed little evidence that it was medically necessary or prescribed by Plaintiff's treating doctors.  (R. at 16; *id.* at 19 ("Furthermore, there was an absen[ce] of evidence or observation by Dr. Sutain that the claimant ambulated with a cane or required assistance or any assistive device."); *id.* at 20 ("Dr. Vehknis stated that the claimant had chronic low back pain and though he ambulated with a cane, there was no clear indication for a need for a cane.")).  And the ALJ explained why the medical record showed little evidence that it was medically necessary for Plaintiff to use a cane despite the fact that a psychologist had reported witnessing Plaintiff relying on a cane to walk.  (*Id.* at 20 ("Dr. Pedoma did observe that the claimant ambulated with a cane and had an impaired gait.  However, Dr. Pedoma is a psychologist and the purpose of the claimant's evaluation was to examine the claimant's mental symptoms.")).  As such, the Court cannot say that the ALJ utterly rejected the idea that Plaintiff required a cane to ambulate without any explanation.  And regardless, "an ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 21-0517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023).  Plaintiff has not directed the Court to any evidence indicating that his cane was medically required.

the "light work" analysis.  *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it.  Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to his RFC determination.").  Accordingly, the ALJ considered all the relevant evidence and rendered an RFC finding with a clear and satisfactory explication of the substantial bases upon which it rests, which is all she was required to do.

Additionally, the ALJ's discussion detailed above reflects that, when explaining why Plaintiff was capable of performing light work, the ALJ implicitly concluded, consistent with the elements of the "light work" exertional level, that Plaintiff could stand/walk for approximately six hours in an eight-hour workday and could lift no more than 20 pounds at a time and could only frequently lift or carry objects weighing up to 10 pounds.  S*ee* 20 C.F.R. §§ 404.1567(b); SSR 83-10; *Cox v. Comm'r of Soc. Sec.*, No. 17-8658, 2018 WL 6499866, at * 6–7 (D.N.J. Dec. 10, 2018) ("In this case, the ALJ determined that Plaintiff was capable of unskilled work at the light exertional level.  That meant Plaintiff was able to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . implicit in the finding that Plaintiff was capable of light work is the acknowledgment that all his impairments—including his severe impairment of the left wrist—were physically limiting to that degree."); *Granados v. Comm'r of Soc. Sec.*, No. 13-0781, 2014 WL 60054, at *10 nn.8, 9 (D.N.J. Jan. 7, 2014) ("Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour workday . . . . [and] that Plaintiff could stand for two hours in an

eight-hour workday." (citing SSR 96–9p)).[3]   Based on the analysis contained within the ALJ's opinion and the inquiries made on the record at the administrative hearing, the Court finds that the ALJ complied with the requirements of SSR 96-8p.

Plaintiff suggests that the ALJ must engage in a formulaic explanation of her RFC decision. The law does not hold the ALJ to such a rigid standard.   Ultimately, the ALJ held that Plaintiff's description regarding "the intensity, persistence[,] and limiting effects" of his conditions were not "entirely consistent" with the medical evidence in the record.  (R. at 18).   While Plaintiff asserts that the RFC determination for the period prior to November 6, 2019 was incorrectly determined, the ALJ considered all relevant and probative evidence to arrive at her decision, including Plaintiff's testimony, medical professional testimony, and medical tests and reports.   The fact that the ALJ did not engage in a formulaic explanation of her RFC decision in the way Plaintiff suggests does not indicate that her decision was not supported by substantial evidence.[4]

---

[3]     To support his argument that the ALJ's RFC analysis was deficient for the period prior to November 6, 2019, Plaintiff points out that while the ALJ found that Plaintiff's shoulder impairments prevented Plaintiff from reaching overhead, the ALJ did not explain why those impairments would not restrict Plaintiff from reaching in every other direction.  (Mov. Br. at 24).  Further, Plaintiff contends that the ALJ failed to explain how Plaintiff's shoulder pathologies could impact his ability to lift and carry 10 to 20 pounds a day, a definitional requirement of light work. (*Id.*).  These arguments do not lead the Court to reach a contrary conclusion.  As already recounted, with respect to Plaintiff's ability to lift and carry and strength and range of motion, the ALJ considered a report from Dr. Bustos, which stated that Plaintiff could perform up to light work, including but not limited to lifting and carrying up to 20 pounds and occasional postural activities except never climbing ladders, ropes, or scaffolds.  (R. at 20).  Further, the ALJ specifically questioned Plaintiff as to his ability to reach for certain items and the extent to which he could raise and extend his arms.  (*Id.* at 59–61 & 68–69).  And the ALJ considered medical evaluations, which indicated that Plaintiff had normal functioning hands for gross and fine manipulations.  (*Id.* at 20).  After considering the aforementioned evidence, the ALJ concluded that Plaintiff had the RFC to perform light work, could frequently handle and feel, but could not reach overhead with either arm.  (*Id.*).  And in reaching that conclusion, the ALJ considered all the relevant evidence and rendered an RFC finding with a clear and satisfactory explication of the substantial bases upon which it rests.  Additionally, the ALJ's discussion indicates that, when explaining why Plaintiff was capable of performing light work, the ALJ implicitly concluded, consistent with the elements of the "light work" exertional level, that Plaintiff could lift no more than 20 pounds at a time and could only frequently lift or carry objects weighing up to 10 pounds, even considering his limitations in being able to raise and extend his arms.  *See* 20 C.F.R. §§ 404.1567(b); SSR 83-10; *Cox*, 2018 WL 6499866, at * 6–7.  Against this backdrop, the ALJ plainly reviewed all of the relevant evidence, and provided a clear explanation of the bases for her RFC determination.

[4]     To support his argument that substantial evidence does not support the ALJ's RFC determination for the period prior to November 6, 2019 because the ALJ failed to conduct a "function-by-function" analysis, as required by SSR 96-8p, Plaintiff cites to *Dixon v. Comm'r of Soc. Sec.*, No. 19-10205, 2020 WL 4696746 (D.N.J. Aug. 13, 2020).  (Mov. Br. at 13–15).  The Court, however, finds *Dixon* distinguishable.  In *Dixon*, the court found that the ALJ failed

ii.    **Other Evidence of Record**

Second, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination for the period prior to November 6, 2019 because the ALJ's decision fails to explain why Plaintiff was found to be disabled for the period beginning on November 6, 2019, but not before that date, when Plaintiff suffered from the same injuries and impairments both before and after November 6, 2019.  (Mov. Br. at 19–23).  In making this argument, Plaintiff contends that the ALJ discounted medical evidence of record in reaching her RFC determination for the period prior to November 6, 2019, which plainly indicated that Plaintiff suffered from the same injuries and impairments both before and after November 6, 2019.  (*Id.*).  The Court finds this argument unavailing.

As already recounted above, for the period before November 6, 2019, the ALJ determined that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds, or exposure to heavy machinery and unprotected heights; occasionally climbing of ramps and stairs, and occasionally crouch, crawl, stoop, kneel, balance; no overhead reaching with either arm; frequent handling and feeling; and the claimant is limited to simple and unskilled tasks.

(R. at 18).  However, the ALJ reached a different RFC determination for the period beginning on November 6, 2019.  More specifically, in finding that Plaintiff had a distinct RFC for the period beginning on November 6, 2019, the ALJ noted that as of November 2019, MRI testing revealed that Plaintiff had increased disc herniation in the lumbar spine.  (*Id.* at 21).  The results of the

---

to adequately explain why the plaintiff had the RFC to perform light work where the ALJ merely recounted certain medical evidence of record and then made her RFC determination "based on the above" recited evidence.  *Dixon*, 2020 WL 4696746, at *2.  In contrast, here, as recounted above, the ALJ plainly reviewed all of the relevant evidence, and provided a clear explanation of the bases for her determination that Plaintiff retained the RFC to perform light work with certain exceptions.  *See Torres*, 2015 WL 8328346, at *9.  As such, Plaintiff's reliance on *Dixon* is unavailing.

November 2019 MRI were in contrast to the results of a previous MRI conducted on September 11, 2018, which revealed only "mild" lumbar spondylosis with no significant central or foraminal stenosis.  (*Id.* at 19).  In fact, the ALJ noted that after the November 2019 MRI, Joseph Lombardi, M.D., stated that the testing "revealed right paracentral disc herniations, annual tears, bulging disc" and recommended that Plaintiff undergo surgery.  (*Id.* at 21).   Further, the ALJ explained that physical evaluations from August 2020 to May 2021 by Dr. Lombardi, revealed that Plaintiff had decreased sensation, impaired reflexes, weakness, and limited range of motion, despite a normal and unassisted gait.  (*Id.*).   Based on these evaluations, Dr. Lombardi ultimately opined that Plaintiff could not sit, stand, walk, nor lift, and would need to miss four or more workdays per month.  (*Id.* at 22).  The ALJ noted that he did not find Dr. Lombardi's ultimate opinion persuasive because Dr. Lombardi had only began treating Plaintiff in October 2020.  (*Id.*).   Further, the ALJ noted that Dr. Lombardi's opinion that Plaintiff could not sit, stand, walk, or lift was inconsistent with Dr. Lombardi's physical evaluations, which consistently noted that Plaintiff could ambulate normally and without assistance.  (*Id.*).   And as recounted above, numerous reports rendered prior to October of 2020 indicated that Plaintiff had functional strength and range of motion, ambulated with a symmetric gait and stance, and did not require an assistive device when walking.  (*See, e.g., id.* at 19–20).   As such, the ALJ concluded that beginning on November 6, 2019 Plaintiff had the RFC, like he did prior to November 6, 2019, to perform light work as defined in 20 CFR 404.1567(b).  (*Id.* at 21).  The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds, and could not be exposed to heavy machinery or unprotected heights.  (*Id.*).   Further, the ALJ further found that Plaintiff could occasionally climb ramps and stairs, crouch, crawl, stoop, kneel, and balance, could frequently handle and feel, but could not reach overhead with either arm and should be limited to simple and unskilled tasks.  (*Id.*).   Nevertheless, because the MRI dated

November 6, 2019, showed that Plaintiff was suffering from increased disc herniations and resultant effects, the ALJ also limited Plaintiff's RFC such that Plaintiff would need to be off task by fifteen percent or miss more than one workday per month due to his chronic back pain. (*Id.* at 22). Accordingly, although the RFC that the ALJ formulated for Plaintiff beginning on November 6, 2019 was largely consistent with the RFC that she had formulated for Plaintiff before November 6, 2019, the ALJ adequately explained why she added the additional limitation that Plaintiff would need to be off task by fifteen percent or miss more than one workday per month due to his chronic back pain beginning on November 6, 2019. And though Plaintiff contends that he suffered from the same injuries and impairments both before and after November 6, 2019, the ALJ specifically explained that she reached a unique RFC determination for the period beginning on November 6, 2019 because of MRI testing conducted around that time, which revealed that Plaintiff had increased disc herniation in the lumbar spine. (*Id.* at 22). In fact, the ALJ recounted the differences between the November 2019 MRI, which revealed that Plaintiff had increased disc herniation in the lumbar spine, and a September 11, 2018 lumbar MRI, which revealed only "mild" lumbar spondylosis with no significant central or foraminal stenosis. (*Id.* at 19 & 22). At best, Plaintiff expresses disagreement with the ALJ's decision. But disagreement is not a basis to disturb an ALJ's decision, which here is supported by substantial evidence. *See Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d Cir. 2020).

Plaintiff contends that the ALJ discounted medical evidence of record in reaching her RFC determination for the period prior to November 6, 2019, which indicates that Plaintiff suffered from the same injuries and impairments both before and after November 6, 2019. (Mov. Br. at 19–23). Again, the Court finds these arguments insufficient to disturb the ALJ's RFC determination for the period prior to November 6, 2019. As an initial matter, in making these

arguments, Plaintiff points to some medical evaluations that the ALJ explicitly considered when conducting her RFC analysis for the period prior to November 6, 2019.  For example, Plaintiff points out that in May 2017, Dr. Sutain reported that Plaintiff was "unable to walk on his toes and heels." (*Id.* at 22 (citing R. at 572–73)).  However, the ALJ specifically acknowledged Dr. Sutain's May 2017 report and noted that even though Dr. Sutain's evaluation indicated that Plaintiff was unable to walk on his toes and heels and had some lumbar tenderness, the doctor's evaluations also consistently showed that Plaintiff ambulated with a "symmetric" gait and stance and demonstrated that Plaintiff had "functional" range of motion and 5/5 strength.  (R. at 19).  Further, Plaintiff points out that in September 2017, Dr. Sinha reported that Plaintiff had limited range of motion in the cervical spine.  (Mov. Br. at 22–23 (citing R. at 526–27)).  Again, however, the ALJ specifically considered Dr. Sinha's September 2017 report, and explained that even though Dr. Sinha's evaluation indicated that Plaintiff had limited range of motion in the cervical spine, that evaluation also revealed that Plaintiff had 5/5 strength and intact sensation.  (R. at 19).  Accordingly, the Court cannot say that the ALJ ignored evidence of Dr. Sutain's May 2017 report or Dr. Sinha's September 2017 report.  Rather, she weighed that evidence with other findings in the record in reaching her ultimate RFC determination for the period prior to November 6, 2019.  "Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]." *Chandler*, 667 F.3d at 359.  And the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012).  Here, the ALJ's opinion was supported by substantial evidence and as such the Court will not disturb the ALJ's RFC determination for the period prior to November 6, 2019.

While Plaintiff contends that the ALJ discounted other medical evidence of record in reaching her RFC determination for the period prior to November 6, 2019, the Court finds that the evidence Plaintiff relies on does not demonstrate that the ALJ would have reached a different RFC determination for that period.  For example, Plaintiff points out that in February 2019, Dr. Sutain reported that plaintiff's "straight leg raising [wa]s positive at 45 degrees," that he had "decreased reflexes," that his ability to flex and extend his back was no more than 50%, that his diagnoses included "chronic pain syndrome," and that plaintiff was assessed as suffering "axial low back pain with intermittent radicular symptoms in a patient with multiple levels of degenerative disc disease and annular tears at L4-L5 and L5-S1." (Mov. Br. at 22 (citing R. at 762)).  Plaintiff further notes that in March 2019, office notes indicated that Plaintiff (i) had neck, low back and right leg pain after his car accident, that affects his quality of life; (ii) has undergone several rounds of physical therapy, for epidural injections   and non-steroidal anti-inflammatory drugs; (iii) ambulates with a cane and has been on disability from work; (iv) could not take neuropathic or opioid medications due to his anti-epileptic medications, and (v) underwent four epidural injections, and three rounds of physical therapy without long lasting relief; and (vi) had decreased activity tolerance, fatigue and irritability.  (*Id.* at 23 (citing R. at 747)).  Again, however, it appears that the ALJ specifically considered Dr. Sutain's February 2019 report and the March 2019 office notes when formulating Plaintiff's RFC.  More specifically, the ALJ noted that Dr. Sutain's February 2019 report also indicated that Plaintiff had full muscle strength and functional range of motion, despite Plaintiff's complaints of pain and muscle tenderness.  (R. at 19).  Further, the ALJ explained that the March 2019 office notes indicated that a September 2018 MRI of Plaintiff's spine revealed only "mild" lumbar spondylosis with no significant central or foraminal stenosis.  (*See id.*).  Accordingly, the Court cannot say that the ALJ wholly ignored evidence of Dr. Sutain's

February 2019 report or the March 2019 office notes.  Rather, she weighed that evidence with other findings in the record in reaching her ultimate RFC determination for the period prior to November 6, 2019.  Regardless, the evidence Plaintiff relies on does not demonstrate that the ALJ would have reached a different RFC determination for the period prior to November 6, 2019.  This is particularly so given that, in making her RFC determination that period, the ALJ considered multiple medical evaluations, which indicated that Plaintiff had functional strength and range of motion, ambulated with a symmetric gait and stance, did not require an assistive device when walking, and had normal functioning hands for gross and fine manipulations.  (*See, e.g., id.* at 19–20).  Ultimately, the ALJ weighed the entirety of this evidence and explained that she limited Plaintiff to performing no more than light exertional work because Plaintiff had multiple unremarkable physical evaluations, but also reported difficulty completing activities of daily living, had a history of back and shoulder pain, and demonstrated a subjective need for ambulating with a cane.  (*Id.* at 21).  Accordingly, the Court finds that the ALJ's RFC determination for the period prior to November 6, 2019 was supported by substantial evidence in the record as whole.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted."); *Nova v. Comm. of Soc. Sec.*, No. 19-18145, 2021 WL 1712262, at *9 (D.N.J. 2021).

V.    **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner.  An appropriate Order follows.

**Dated**: February 26, 2024                                             *s/ Esther Salas*
                                                                     **Esther Salas, U.S.D.J.**